**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **THOMAS SHIRLEY,** )
| )
| **Plaintiff,** )
| )
| **v.** ) **No. 3:21-cv-00467**
| )
| **AMANDA HYNES-SIMMS,** *et al.*, )
| )
| **Defendants.** )
| ) |

**MEMORANDUM OPINION**

Thomas Shirley, an inmate of the Morgan County Correctional Complex (MMCX) in Wartburg, Tennessee, filed a pro se, in forma pauperis complaint under 42 U.S.C. § 1983 against MCCX Director of Mental Health Amanda Hynes-Simms, MCCX Warden Michael Parris, MCCX Warden Steve Jones, MCCX Warden Stacy Oakes, Tennessee Department of Correction (TDOC) Commissioner Tony Parker, MCCX Lieutenant Kevin Wall, MCCX Sergeant f/n/u Mason, MCCX Unit Manager Brandon Robinson, and MCCX Corporal f/n/u Delk. (Doc. No. 1). Plaintiff also filed three motions to amend his complaints (Doc. Nos. 9, 10, 11), a "Preliminary Motion for Temporary Restraining Order on all Defendants" (Doc. No. 11)[1], and a "Preliminary Injunctive Order for T.R.O and Cease and Dissist [sic] Motion" (Doc. No. 13).

**I.     Motions to Amend Complaint**

Subsequent to filing his complaint, Plaintiff filed three motions to amend his complaint to add MCCX Counselor Brian Reynolds (Doc. No. 9), MCCX Therapist Brittney Hill and Hill's employer, Centurion Corp. (Doc. No. 10), and MCCX Therapists Tara Harvey and Amber Switzer

---

[1] This motion seeks both an amendment of the complaint and preliminary injunctive relief.

1

(Doc. No. 11) as Defendants. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely granted when justice requires. No Defendants have been served at this time, and the Court finds it appropriate to permit Plaintiff to amend his complaint as requested. Therefore, the Court will screen the original complaint, as amended, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## II.    PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded

2

factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

The court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## IV. Alleged Facts

According to the complaint, while incarcerated at MCCX, Defendants violated "policy" and Plaintiff's federal civil and due process rights as well as committed "malicious intent, neglect, [and] abuse." (Doc. No. 1 at 2). Specifically, Plaintiff was beaten twice daily by Correctional

3

Officers for a two-month periods (Id. at 3); on June 6, 2021, Defendants would not process Plaintiff's grievance forms (Id.); Defendants permitted, and are permitting, "P.C." inmates from C-pod and A-pod to serve Plaintiff food in which the inmates put hair and feces, and these inmates routinely steal Plaintiff's drinks, food, and condiments (Id.); Defendants will not allow Plaintiff to participate in mandatory therapy "out of cell group" (Id.); Plaintiff is kept in his cell 24 hours a day due to alleged staff shortages (Id.); and Defendants have refused to give Plaintiff haircuts or cleaning supplies for the past 60 days. (Id. at 4). In addition, according to Plaintiff, inmates housed in the mental health pod are treated differently than other inmates and are not afforded the same rights and opportunities. Plaintiff believes that Defendants have discriminated, and continue to discriminate, against him and other inmates housed in the mental health pod. (See Doc. No. 1).

The complaint further alleges that Plaintiff is "literally dying . . . of malnutrition" because he refuses to eat the meals provided to him and wants to be placed in the DeBerry Special Needs Facility where he can be fed through an IV. (Id. at 5). Plaintiff is a housed in a cell "that was burned with fire 6 times" and is not allowed a mattress or shoes. (Id.) Plaintiff "is in pain with no shoes, barefoot and sleeping on a metal slab." (Id.)

The complaint alleges that Defendant Parker "is in charge of" MCCX and that he "allowed" the other Defendants to take the actions described in the complaint. (Id. at 2). The complaint also alleges that Defendant Hynes-Sims "has a say so in what goes on in the 26 Bldg. B pod." (Id.)

The complaint as amended alleges that Defendant Reynolds assists the other Defendants "in housing Shirley in isolation and allows the abuse as stated same in claim." (Doc. No. 9 at 1). In addition, Reynolds "refused/refuses to help transfer Shirley" and "ignores the abuses that Shirley documented." (Id. at 2). In addition, the complaint as amended alleges that Defendant Hill retaliated against Plaintiff because he sued her boss. (Doc. No. 10 at 1). In particular, the complaint

alleges that Hill refuses to input Plaintiff's work credits, failed to notify staff when the plaintiff attempted suicide, and refuses to permit Plaintiff to participate in "rec therapy" and group therapy. (Id.) Further, the complaint alleges that Defendant Hill "commits neglect, malicious intent, bias against mental health patients and cruel and unusual punishment." (Id.) The plaintiff also names Hill's employer, Centurion Corp., as a Defendant. (Id. at 11).

Plaintiff's third amendment to the complaint alleges that MCCX therapists Tara Harvey and Amber Switzer also are responsible for the alleged above wrongs committed against Plaintiff. (Doc. No. 11 at 3).

## V.     Analysis

MCCX Director of Mental Health Amanda Hynes-Simms, MCCX Warden Michael Parris, MCCX Warden Steve Jones, MCCX Warden Stacy Oakes, TDOC Commissioner Tony Parker, MCCX Lieutenant Kevin Wall, MCCX Sergeant f/n/u Mason, MCCX Unit Manager Brandon Robinson, MCCX Corporal f/n/u Delk, MCCX Counselor Brian Reynolds, MCCX Therapists Brittney Hill, Tara Harvey, and Amber Switzer, and Centurion Corp. are named as Defendants to this action.

### A.     Supervisor Liability

First, the complaint alleges that TDOC Commissioner Parker "is in charge of TDOC's Morgan County Correctional Complex" and allowed all Defendants to violate Plaintiff's rights. (Doc. No. 1 at 2). However, Defendant Parker does not bear legal responsibility simply because of his role as TDOC Commissioner. There is no allegation that he had any involvement in any of the events described in the complaint. See, e.g., Frazier v. Michigan, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); see

5

also <u>Braswell v. Corr. Corp. of Am.</u>, 419 F. App'x 622, 627 (6th Cir. 2011) (noting the absence of respondeat superior liability in § 1983 and holding plaintiff must allege "a policy or well-settled custom of the [entity] was the 'moving force' behind the alleged deprivation" of his rights). Plaintiff's claim against Commissioner Parker therefore will be dismissed.

### B. Excessive Force

Next, the complaint alleges that unidentified MCCX correctional officers beat Plaintiff twice daily for a two-month period. (Doc. No. 1 at 3). Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" <u>Cordell v. McKinney</u>, 759 F.3d 573, 580 (6th Cir. 2014) (quoting <u>Williams v. Curtin</u>, 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." <u>Cordell</u>, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" <u>Id.</u> (quoting <u>Combs v. Wilkinson</u>, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

In determining whether the force used was applied in a good faith effort to restore discipline or rather inflicted for a malicious purpose, it is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful

response.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." Cordell, 759 F.3d at 581 (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)) (alteration in original). A significant physical injury is not required to establish the objective component of an Eighth Amendment claim. Wilkins, 559 U.S. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). In the end, a determination of what constitutes "unnecessary and unwanton infliction of pain," is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 8.

Here, the complaint alleges facts that could be viewed as stating colorable excessive force claims against the as-yet identified correctional officers who "beat" Plaintiff twice daily for a two-month period. Taking into consideration Plaintiff's pro se status and these allegations, Plaintiff will be permitted to amend his complaint, if he so desires, to name those correctional officers as defendants to this action in their individual capacities.

### C.      Conditions of Confinement

The Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); Grubbs v. Bradley, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). That is because "[t]he Eighth

7

Amendment to the United States Constitution imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be 'barbarous,' nor may it contravene society's 'evolving standards of decency.'" McKissic v Barr, No. 1:20-cv-526, 2020 WL 3496432, at *3 (W.D. Mich. June 29, 2020) (quoting Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981)); see also Bellamy v. Bradley, 729 F.2d 416, 419 (6th Cir. 1984). Under the Eighth Amendment, prison officials cannot engage in conduct that causes the "unnecessary and wanton infliction of pain." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346).

To prevail on an Eighth Amendment claim, a prisoner must show that he or she faced a sufficiently serious risk to health or safety and that the defendant official acted with "'deliberate indifference' to [the prisoner's] health or safety." Mingus v. Butler, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing Farmer, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); see also Helling v. McKinney, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (citing Farmer, 511 U.S. at 837). The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. Farmer, 511 U.S. at 835, 839-40.

The complaint alleges that several distinct conditions of Plaintiff's confinement violate the Eighth Amendment.

### 1. No Time Outside Cell

The complaint alleges that Plaintiff is kept in his cell for 24 hours a day with no outdoor recreation. (Doc. No. 1 at 3).

The amount of exercise that a prisoner is provided need only comport with the "'minimal civilized measure of life's necessities.'" <u>Walker v. Mintzes</u>, 771 F.2d 920, 927 (6th Cir. 1985) (quoting <u>Rhodes</u>, 452 U.S. 337, 347 ); <u>Jones v. Stine</u>, 843 F. Supp. 1186, 1193 (W.D. Mich. 1994) (citing <u>Walker</u>, 771 F.2d at 927-28 (6th Cir. 1985)) (acknowledging that the Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being). Therefore, a total denial of recreational opportunities may violate the Constitution. <u>See</u> <u>Walker</u>, 771 F.2d at 927-28; <u>McNabb v. Long</u>, No. 3:18-cv-0067, 2018 WL 2318342, at *4 (M.D. Tenn. May 22, 2018) (finding that prisoner-plaintiff stated a colorable Eighth Amendment claim  when he alleged that jail has a policy of denying inmates all outdoor recreation and exercise). Although the Sixth Circuit has not defined a minimum standard for recreation for adult prisoners, in its opinion in <u>Rodgers v. Jabe</u>, 43 F.3d 1082, 1087-1088 (6th Cir. 1995), the Court suggested that an hour of exercise per day, five times a week, is the constitutional minimum for inmates who were otherwise confined to their cells for the entire day. <u>Id.</u> at 1087.

Here, the complaint alleges that Plaintiff is not permitted *any* time outside of his cell. However, Plaintiff does not allege any physical or mental injury as a result of allegedly insufficient recreation time. Further, he acknowledges that staff shortages are one of the reasons why he has not received any outdoor recreation.[2] (Doc. No. 1 at 3). Therefore, Plaintiff has failed to demonstrate that any limitations on his recreational opportunities were the result of deliberate

---

[2] The Court will address Plaintiff's additional allegation pertaining to outdoor recreation, that inmates housed in the mental health pod are treated differently than other inmates, later in this Opinion.

indifference under the Eighth Amendment.  See Hudges v. Bedford County, No. 4:18-cv-75, 2020 WL 980143, at *4 (E.D. Tenn. Feb. 28, 2020) (finding prisoner-plaintiff failed to state a Section 1983 claim where "the evidence demonstrates that the [lack of] recreational opportunities were the result of the necessities of prison management, and thus, were reasonably related to legitimate penological interests.").  Thus, this allegation fails to state an Eighth Amendment claim.

### 2.    No Mattress or Shoes

The complaint alleges that Plaintiff  is not allowed a mattress or shoes and that he is experiencing pain as a result. (Doc. No. 1 at 5). The complaint broadly alleges that all Defendants are responsible "via sheer deliberate indifference." (Id. at 4). Taking into account Plaintiff's pro se status, the Court will permit Plaintiff an opportunity to amend his complaint to identify the persons directly responsible for denying him a mattress and shoes and explain how these individuals acted with deliberate indifference to Plaintiff's serious medical needs.

### 3.    No Cleaning Supplies

The complaint alleges that Plaintiff  has not been provided with cleaning supplies for sixty days. (Doc. No. 1 at 5).

To the extent that Plaintiff alleges his living quarters are  unsanitary due to the lack of cleaning supplies, the complaint does not allege that Plaintiff has suffered any harmful effects due to the conditions of his living quarters. Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. See McIntyre v. Phillips, No. 1:07-cv-527, 2007 WL 2986470, at *4 (W.D. Mich. Sept. 10, 2007) (recommending dismissal of pro se prisoner's Section 1983 claim where "Plaintiff does not present any evidence that his exposure to black mold caused him anything beyond his unsubstantiated, perceived risk of future medical issues. Furthermore,

"not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey, 832 F.2d at 954.

Taking into account his pro se status, the Court will permit Plaintiff an opportunity to amend his complaint to identify the persons directly responsible for denying Plaintiff access to cleaning supplies, explain how those individuals acted with deliberate indifference towards Plaintiff, and describe the harm Plaintiff suffered as a result of his alleged unsanitary conditions of his cell.

### 4. No Haircuts

The complaint alleges that Plaintiff has not been afforded a haircut for at least sixty days. (Doc. No. 1 at 4).

A prisoner may not be denied his basic needs, including hygiene. Estelle, 429 U.S. at 104. However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety," and that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. At most, in being denied haircuts, Plaintiff has alleged a minor inconvenience or discomfort, neither of which rise to the level of an Eighth Amendment violation. See Rhodes, 452 U.S. at 347; Baggett v. Fuson, No. 3:14-cv-02366, 2015 WL 328348, at *4 (M.D. Tenn. Jan. 23, 2015). Plaintiff does not allege lack of shampoo or soap with which to wash his hair, nor does he allege that he has been harmed by having to wear longer hair. For these reasons, Plaintiff's claim that Defendants' failure to provide haircuts violates his rights under the Eighth Amendment will be dismissed.

**D.    Meals**

Next, the complaint alleges that Plaintiff has been, and is being, served tainted food by "P.C." inmates and that Plaintiff is "literally dying . . . of malnutrition." (Doc. No. 1 at 5).

Prison officials are required to provide inmates with adequate food.  For Eighth Amendment purposes, adequate food need only be sufficient to "maintain normal health." Cunningham v. Jones, 567 F.2d 653, 660 (6th Cir. 1977); Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted) (adequate food is characterized as "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'"). Complaints about the preparation or quality of prison food generally do not amount to Eighth Amendment violations. Cunningham, 567 F.2d 653, 659-60; Baggett, 2015 WL 328348, at *3 (finding that prisoner-plaintiffs failed to state an Eighth Amendment claim where they alleged they were forced to eat their meals in their cells near toilets and the quality of the food served to them was "not to their liking").

Here, however, Plaintiff alleges that his health has suffered because the "P.C." inmates serving  his food have tainted it with feces and hair. (Doc. No. 1 at 3). Indeed, Plaintiff maintains that he is "dying  . . . of malnutrition" because he refuses to eat the unsanitary food provided to him by these inmates.  (Id. at 5).  Depriving an inmate of food, or serving him contaminated food, states a colorable Eighth Amendment claim. Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Abdulkarim v. Metro. Sheriff Dep't, No. 3:15-cv-00040 (M.D. Tenn. Feb. 11, 2015) (finding a colorable Eighth Amendment claim where prisoner-plaintiff alleged that he found roaches and hair in his food, his meal trays had  food from previous meals stuck on them, and plaintiff was sick as a result of eating while incarcerated). The Court therefore finds that Plaintiff has stated a non-frivolous Eighth Amendment claim based on these allegations.

12

The complaint generally alleges that all Defendants are responsible for this condition of Plaintiff's confinement. The Court will permit Plaintiff, who is acting pro se, an opportunity to amend his complaint to identify the persons directly responsible for the alleged unsanitary conditions of meal service, explain how those individuals acted with deliberate indifference towards Plaintiff, and describe the harm Plaintiff suffered as a result of his alleged unsanitary conditions of meal service.

### E.    Violation of Prison Policy

The complaint alleges that Defendants are violating TDOC policies 44-10 and 506.16. (Doc. No. 11 at 5).

To the extent that the complaint alleges that Defendants violated TDOC or MCCX policies, an inmate's allegation that prison officials failed to follow TDOC administrative policies does not, in and of itself, rise to the level of a constitutional violation. Laney v. Farley, 501 F.3d 577, 581 n.2 (6th Cir. 2007). Neither does Section 1983 provide a remedy for violations of state laws or regulations. Lewellen v. Metro. Gov't of Nashville and Davidson Cnty., 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). See also Storm v. Swiger, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding that the violation of a prison regulation is not actionable under § 1983) (citing Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993), overruled in part on other grounds by Thompson v. Keohane, 516 U.S. 99, 111 (1995)).

For these reasons, Plaintiff does not have a constitutional right to demand that Defendants comply with any particular TDOC or MCCX policy. See Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Consequently, the

Court finds that the complaint fails to state Section 1983 claims arising from any Defendant's failure to follow TDOC or facility policies. These claims will be dismissed.

### F. Inability to Participate in Therapy and Mental Health Treatment

The complaint alleges that Defendants do not allow Plaintiff to participate in mandatory therapy. (Doc. No. 1 at 3). In addition, the complaint alleges that, "when Shirley asked for help with suicide issues, he is ignored." (Doc. No. 11 at 3).

To the event Plaintiff argues that he is entitled to participate in therapy because it is a rehabilitative or educational program, prisoners have no constitutionally cognizable right to participate in such programs. See Rhodes, 452 U.S. 337, 348; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989); Kenner v. Martin, 648 F.2d 1080, 1081 (6th Cir. 1981) (per curiam); Carter v. Corrs. Corp. of Am., No. 98-6336, 1999 WL 427352, at *1 (6th Cir. June 15, 1999). However, failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. See Comstock, 273 F.3d at 703 (finding there is no dispute that "psychological needs may constitute serious medical needs.") (citation omitted).

The complaint alleges that Plaintiff is suffering from mental health needs and Defendants have refused, and are refusing, to provide him with any treatment, even for repeated suicidal ideation. This allegation could state a colorable Eighth Amendment violation. Therefore, the Court will permit Plaintiff an opportunity to more fully develop this clam by amending his complaint to specifically identify every individual Defendant who has denied Plaintiff mental health treatment and explain how each Defendant acted with deliberate indifference to Plaintiffs mental health needs. As the Court has explained herein, Plaintiff must describe the personal involvement of each

Defendant in the alleged unconstitutional behavior rather than make a generalized assertion that all Defendants violated Plaintiff's rights.

### G.    Failure to Process or Respond to Inmate Grievances

The complaint alleges that, on June 6, 2021, Defendants would not process Plaintiff's grievance forms. (Doc. No. 1 at 3).

A prison official's failure to respond to a prisoner's letter or grievance does not state a constitutional claim. That is because a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure. See e.g., Lee v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (stating that the Constitution creates no entitlement to voluntarily established grievance procedure). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, Plaintiff's claim based on any Defendant's failure to respond to Plaintiff's grievances do not state a claim upon which relief can be granted. These claims will be dismissed.

### H.    Failure to Transfer Plaintiff to a Different Prison

The complaint as amended alleges that Defendants Reynolds, Harvey, and Switzer refuse to help transfer Plaintiff to the Lois DeBerry Special Needs prison. (Doc. No. 9 at 2, Doc. No. 11 at 3).

However, inmates have no constitutional right to be confined in any particular prison. Olim v. Wakinekona, 461 U.S. 238 (1983); Williams v. Bezy, 97 F. App'x 573, 574 (6th Cir. 2004). Thus, the complaint fails to state Section 1983 claims upon which relief can be granted against any

15

Defendant based on his or her failure to transfer Plaintiff because Plaintiff has no constitutional right to choose his site of imprisonment.

## I.    Retaliation

The complaint as amended alleges that Defendant Hill retaliated against Plaintiff because he sued her boss. (Doc. No. 10 at 1). In particular, the complaint alleges that Hill refuses to input Plaintiff's work credits, failed to notify staff when the plaintiff attempted suicide, and refuses to permit Plaintiff to participate in "rec therapy" and group therapy.[3] (Id.)

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999).  To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that:  (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct.  Id. at 394-99.  In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than de minimis harm resulting from it.  See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396.  The plaintiff has the burden of proof on all three elements.  Murray v. Unknown Evert, 84 F. App'x 553, 556 (6th Cir. 2003).

The Court finds that Plaintiff's allegations of retaliation are sufficient to state a nonfrivolous claim of First Amendment retaliation. First, Plaintiff's initiation of litigation is protected speech under the First Amendment. See Horn v. Hunt, No. 2:15-cv-220, 2015 WL

---

[3] The Court addressed Plaintiff's therapy-based claims above.

5873290, at *5-6 (S.D. Ohio Oct. 8, 2015) ("[C]ourts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts"; "[o]nce a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the petitioner" implicates First Amendment protections) (citing cases).

Second, the adverse actions of not having one's work credits accounted for and failure to be treated for a mental health crisis would deter a person of ordinary firmness from continuing to engage in the protected conduct. See Thaddeus-X, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed"). Finally, Plaintiff alleges that these punitive actions were motivated by his protected conduct of suing Defendant Hill's boos. See Hill, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Consequently, the Court finds that the complaint states a colorable First Amendment retaliation claim under Section 1983 against Defendant Hill in her individual capacity.

The amended complaint names Hill's employer, Centurion Inc., as a Defendant to this claim, presumably because Plaintiff believes an employer is responsible for the actions of its employees. Centurion Corporation appears to be the entity responsible for providing medical care to prisoners at MCCX. Centurion Corporation is a state actor under Section1983 because its employees provide medical care to prisoners at MCCX. See West v. Atkins, 487 U.S. 42, 54 (1988); McCullum v. Tepe, 693 F.3d 696, 699-700 (6th Cir. 2012). The law is settled that actions brought against state actors cannot be maintained under § 1983 on a theory of respondeat superior,

see e.g., Monell v. Dept. of Social Serv's of The City of New York, et al., 436 U.S. 658, 659, 691-95 (1978); Siggers v. Campbell, 652 F.3d 681, 695 (6th Cir. 2011) (citing Taylor v. Michigan Dep't of Corrs., 69 F.3d 76, 80–81 (6th Cir.1995)), unless the state actor was directly involved in the alleged violations of the plaintiff's constitutional rights, see Colvin v. Caruso, 605 F.3d 282, 292 (6th Cir.2010) (internal citations and quotation marks omitted). For vicarious liability to attach here, Centurion must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [party]." Colvin, 605 F.3d at 292 (citing Cardinal v. Metrish, 564 F.3d 794, 802-03 (6th Cir. 2009)).

The complaint does not allege that Centurion was directly responsible for any of the alleged acts and/or omissions of Hill, nor can any such claims be liberally construed against Centurion. Neither does the complaint allege that Centurion acted pursuant to a corporate policy or custom that violated the Plaintiff's constitutional rights. Instead, the complaint alleges simply that Centurion is Hill's employer. Because the complaint fails to allege any direct responsibility by Centurion, or that Centurion acted pursuant to a corporate policy or custom that violated the Plaintiff's constitutional rights, Centurion is not liable to the Plaintiff under the doctrine of respondeat superior regardless of what Centurion's employee Hill may or may not have done. Thus, the Court will dismiss the claims against Centurion for failure to state claims upon which relief can be granted.

### J.    Treating Mental Health Pod Inmates Differently

Finally, the complaint alleges that MCCX inmates housed in the mental health pod are treated differently than other inmates and are not afforded the same rights and opportunities. Plaintiff believes that Defendants have discriminated, and continue to discriminate, against him and other inmates housed in the mental health pod because of their mental health status. (Doc. No.

18

1 at 4) ("Note that <u>other</u> pods get their policy mandated rights but we are discriminated against due to our status/class as mental health inmates and no one talks to us to address any of our needs, on purpose, via sheer deliberate indifference.") (underlining in original).

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Fourteenth Amendment is "in essence 'a direction that all persons similarly situated should be treated alike.'" <u>Robinson v. Jackson</u>, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985)). Thus, the threshold element of an equal protection claim is disparate treatment. <u>Scarbrough v. Morgan Cty. Bd. of Educ.</u>, 470 F.3d 250, 260 (6th Cir. 2006). A plaintiff must allege that the government treated him or her disparately as compared to "similarly situated persons." <u>Center for Bio-Ethical Reform, Inc. v. Napolitano</u>, 648 F.3d 365, 379 (6th Cir. 2011); <u>see also</u> <u>Tree of Life Christian Schs. v. City of Upper Arlington</u>, 905 F.3d 357, 368 (6th Cir. 2018) (explaining that an equal protection plaintiff must be similarly situated to his comparators "in all relevant respects"). However, "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." <u>Maye v. Klee</u>, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing <u>Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 264-65 (1977)). <u>See also</u> <u>Pleasant-Bey v. Tenn.</u>, No. 3:19-cv-00486, 2020 WL 707584, at *9 (M.D. Tenn. Feb. 12, 2020). A plaintiff may state an equal protection claim by plausibly alleging "that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." <u>Davis v. Heyns</u>, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017) (quoting <u>Robinson</u>, 615 F. App'x at 314-15).

19

Here, Plaintiff alleges that MCCX has a policy or custom of treating inmates housed in mental health units differently than inmates housed in other units. Plaintiff also alleges that he is a member of any protected class, and that Defendants acted with a discriminatory intent or purpose. Construed liberally, the complaint alleges that Defendants "intentionally discriminated against him because of his membership in that protected class." McGaughy v. Johnson, 63 F. App'x 177, 178 (6th Cir. 2003) (citing Herron v. Harrison, 203 F.3d 410, 417 (6th Cir. 2000)). The Court finds that these allegations sufficiently state a colorable equal protection claim under Section 1983 for purposes of the required PLRA screening. Cf. Dulworth v. Lindamood, No. 1:18-cv-00036, 2018 WL 4467038, at *4 (M.D. Tenn. Sept. 18, 2018) (dismissing prisoner-plaintiff's equal protection claim where "the complaint fails to allege that Defendant treated mentally ill or disabled inmates differently than non-mentally ill inmates in any way or discriminated against these Plaintiffs because of their membership in a protected class. Neither does the complaint allege that Plaintiffs were denied access to programs or services on account of their mental health conditions or disabilities arising from those conditions.").

The complaint identifies Defendants Michael Parris, Stacy Oakes, and Steve Jones as MCCX Wardens with responsibility for creating and/or implementing MCCX policies. (Doc. No. 1 at 1). Likewise, liberally construed, the complaint names MCCX Director of Mental Health Hynes-Simms, MCCX Lieutenant Kevin Wall, MCCX Sergeant f/n/u Mason, MCCX Unit Manager Brandon Robinson, MCCX Corporal f/n/u Delk, and MCCX Therapists Brittney Hill, Tara Harvey, and Amber Switzer as Defendants responsible in some way for the implementation of the alleged MCCX discriminatory policy. (Id. at 2, Doc. Nos. 10 and 11). Plaintiff's equal protection claims will proceed against these Defendants.

## VI.    Motions for Temporary Restraining Order (Docs. No. 11 and 13)

Plaintiff has filed a "Preliminary Motion for Temporary Restraining Order on all Defendants" (Doc. No. 11) and a "Preliminary Injunctive Order for T.R.O. and Cease and Dissist [sic] Motion" (Doc. No. 13). In the former motion, Plaintiff asks the Court to freeze or garnish Defendants' wages until this case is complete and prohibit Defendants from coming within 10,000 feet of Plaintiff for one year. (Doc. No. 11 at 3-4). Plaintiff also asks the Court to place a "cease and dissist [sic]" order on Commissioner Parker and Warden Oakes "to stop having grievances form's [sic] throw into the trash by staff at MCCX." (Id. at 5). According to Plaintiff, a Temporary Restraining Order (TRO) is needed "due to blatant abuse via verbal and isolation abuse by the named Defendants, all are in cahoots of being in full concert with each other to isolate and ignore Plaintiff and also allow abuse to go on and violate policy's [sic] and safety . . . ." (Id. at 7).

In the latter motion, Plaintiff seeks preliminary injunctive relief against "all/any 'C-pod' Security Management Unit" workers "due to the defendants Amanda Simms and Warden Oakes hiring and allowing Cpod 'Security Management Unit' (gang members) Cpod workers such as white supremacist/gang member Williams Joyce aka 'Wild Bill' being allowed to illegally and against policy come into Bpod (a mental health unit/sheltered living unit) and harrassing [sic] and intimidating the Federal Plaintiff . . . ." (Doc. No. 13 at 2). Plaintiff asks for a TRO enjoining C-pod workers from entering the B-pod unit. (Id.)

Federal Rule of Civil Procedure 65 governs the Court's power to grant injunctive relief, including temporary restraining orders without notice.  Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to

alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." <u>Stenberg v. Checker Oil Co.</u>, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." <u>Ciavone v. McKee</u>, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing <u>Overstreet v. Lexington-Fayette Urban Cty. Gov't</u>, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." <u>Glauser-Nagy v. Med. Mut. of Ohio</u>, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. <u>See, e.g.</u>, <u>Workman v. Bredesen</u>, 486 F.3d 896, 905 (6th Cir. 2007); <u>Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell</u>, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." <u>Jones v. Caruso</u>, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

In this case, a careful balancing of the factors weighs against granting Plaintiff's requests for emergency or temporary injunctive relief.

First, under controlling Sixth Circuit authority, a plaintiff's "initial burden" in demonstrating entitlement to injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. NAACP v. City of Mansfield, 866 F.2d 162, 167 (6th Cir. 1989). With respect to Plaintiff's request that the Court enjoin Commissioner Parker and Warden Oakes from permitting MCCX staff members from discarding inmate grievances, the Court has reviewed Plaintiff's complaint pursuant to the PLRA and determined that Plaintiff's grievance-related claims against all Defendants, including Commissioner Parker and Warden Oakes, fail to state claims upon which relief can be granted under Section 1983. Therefore, Plaintiff cannot demonstrate a likelihood of success on the merits with regard to any Defendants' manner of handling Plaintiff's grievances.

Plaintiff's request for the Court to restrict the movement of MCCX staff members within the prison appears to be related to Plaintiff's allegations that Defendants are violating TDOC policies and delegating tasks, such as inmate meal delivery, to certain inmates. However, the Court already has determined that any claims related to Defendants' failure to follow TDOC or MCCX policies fails as a matter of law. With respect to Plaintiff's request for the Court to restrict the movement of certain inmates, Plaintiff alleges that C-pod workers "come into the Bpod . . . unit and [are] harrassing [sic] and intimidating the Federal Plaintiff . . . ." when they deliver his meals. (Doc. No. 13 at 2). Plaintiff maintains that "Defendants have the ability and power to hire a Bpod

worker to work in Bpod (defendants hired Cpod worker for morning and lunch and a Bpod worker was hired for dinner, and the Bpoder worker is not a problem) . . . ." (Id. at 3).[4]

"Wide-ranging deference must ordinarily be accorded the decisions of prison administrators." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977). Prison employees must be able to move within the prison as needed for security and other reasons and must be able to delegate certain tasks, such as meal delivery, as they see fit. See Hayes v. Tenn., 424 F. App'x 546, 550 (6th Cir. 2011) ("As maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures."); Grubbs v. Bradley, 821 F. Supp. 496, 502 (M.D. Tenn. 1993) (stating that, absent a clear finding of constitutional violations, federal courts will not interfere with the state's administration of its prison system). Given the allegations before it, the Court finds that it is not appropriate to interfere with the daily workings of MCCX at this time based on Plaintiff's likelihood of success on the merits.

With regard to the second factor, whether the movant will suffer irreparable harm without the injunction, Plaintiff alleges that C-pod inmates harass, threaten, and intimidate him. (Doc. No. 13 at 2). He does not provide any additional details regarding these allegations that would explain why taking the extraordinary step of interfering with the day-to-day workings of a state prison would be justified.

And, while it appears that no third parties would be harmed if the preliminary injunction were issued, neither does it appear that any public interest would be served.

---

[4] In his TRO motions, Plaintiff does not mention his allegation that C-pod inmates routinely place feces and hair in his food. Therefore, the Court has not considered those allegations while considering Plaintiff's request for preliminary injunctive relief.

In summary, the Court finds that Plaintiff has not borne his burden for issuance of temporary injunctive relief. Accordingly, Plaintiff's motions (Doc. Nos. 11 and 13) will be denied.

**VII. Conclusion**

For the reasons explained herein, Plaintiff's motions to amend (Doc. Nos. 9, 10, and 11) will be granted. Conversely, Plaintiff's "Preliminary Motion for Temporary Restraining Order on all Defendants" (Doc. No. 11) and "Preliminary Injunctive Order for T.R.O and Cease and Dissist [sic] Motion" (Doc. No. 13) will be denied.

Having conducted the screening required by the PLRA, the Court determines that the complaint fails to state claims upon which relief can be granted under Section 1983 against Commissioner Parker and Centurion Corp. The claims against these Defendants will be dismissed.

However, the complaint states a colorable retaliation claim under Section 1983 against Defendant Hill and colorable equal protection claims under Section 1983 against Defendants Parris, Oakes, and Jones, Hynes-Simms, Wall, Mason, Robinson, Delk, Hill, Harvey, and Switzer. These claims will proceed for further development.

Further, because the complaint alleges facts that could be viewed as stating colorable excessive force claims against the as-yet identified correctional officers who "beat" Plaintiff twice daily for a two-month period, Plaintiff will be permitted to amend his complaint, if he so desires, to name those correctional officers as defendants to this action in their individual capacities. Plaintiff also will be permitted to amend his complaint, if he so desires, to more fully develop his Eighth Amendment claims pertaining to mattresses, shoes, meals, cleaning supplies, and mental health treatment.

Plaintiff must submit any such amendments in a single amended complaint containing all amendments permitted by the Court.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE